UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELANIE SENTIN, *et al.*,[1]

       Plaintiffs,

  v.

KIMBERLY SZCZEPANKIEWICZ, *et al.*,

       Defendants.
_____

23-CV-108-LJV
DECISION & ORDER

      The *pro se* plaintiff, Melanie Sentin, has filed a complaint asserting claims under 42 U.S.C. § 1983.[2]  Docket Item 1.  She alleges that the defendants—Erie County Child Protective Services ("CPS") workers Kimberly Szczepankiewicz and Corey Cobb; Police Officer Gary Mahoney; a John Doe defendant; and a defendant named "Dan" who

---

[1] Sentin lists Mekayla Rae Sentin and Gabriel Horder as plaintiffs to this action. Docket Item 1 at 1.  She does not explain her relationship with either of those individuals; based on the allegations in the complaint, however, the Court assumes that they are Sentin's children.

    Federal law affords parties a statutory right to "plead and conduct their own cases," 28 U.S.C. § 1654, but that statute does not permit "unlicensed laymen to represent anyone else other than themselves," *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)); *see also Tse-Ming Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.").  Therefore, any claims Sentin asserts on behalf of her children are subject to dismissal.  If Sentin's children would like to pursue those claims, an attorney must enter an appearance to represent them within 45 days of the date of this order.  Otherwise, Mekayla Rae Sentin and Gabriel Horder will be terminated as plaintiffs to this action and any claims asserted on their behalf will be dismissed.

[2] Sentin does not explicitly invoke section 1983, but the Court construes the complaint as asserting claims under that section because Sentin has sued several state and county officials for violating her "civil rights."  *See* Docket Item 1.

works with the "OLV" agency—violated her rights in connection with a series of events related to the custody of her children.[3]  *Id.*

On April 27, 2023, Cobb and Szczepankiewicz moved to dismiss the claims against them.  Docket Items 7, 8.  Szczepankiewicz also moved for a more definite statement of Sentin's claim.  *See* Docket Item 8; Docket Item 8-3 at 4-6.  On August 1, 2023, Mahoney moved to dismiss the claims against him.  Docket Item 20.  Sentin responded to all three motions to dismiss, Docket Items 12, 23, but none of the defendants replied.

For the reasons that follow, Mahoney's motion to dismiss is denied, but Szczepankiewicz's and Cobb's motions to dismiss will be granted unless Sentin files an amended complaint correcting the deficiencies addressed below.  Szczepankiewicz's motion for a more definite statement is granted to the extent discussed below.

## **BACKGROUND**[4]

Sentin's claims arise from a series of interactions with state and county officials related to the custody of her daughter and son.  She has sued the defendants for

---

[3] The John Doe defendant has not been identified or served, and Sentin did not list the defendant named "Dan" in the caption of the complaint.  *See* Docket Item 1.  Any amended complaint should list all the defendants in the caption and should provide information from which each John Doe defendant can be identified.

[4] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  In deciding the motion, the court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Unless otherwise noted, the following facts are taken from the complaint and the documents attached to the complaint, Docket Item 1.  They are viewed in the light most favorable to Sentin.

violating her "civil rights," but she does not articulate which rights the defendants allegedly violated. Docket Item 1. Additionally, portions of the complaint are confusing: Sentin repeatedly refers to actions "they" took, but she often does not say who "they" are. *See generally id.* Despite that lack of clarity, a liberal reading of the complaint tells the following story.

On February 4, 2022, at about 10:20 a.m., Sentin's son called Sentin on the phone. *Id.* at 6. He sounded "scared" and told her that "two guys showed up in the house knocking [at] the door so hard." *See id.*

At 11:15 a.m., "they"—Sentin does not say who—arrived at a house in Hamburg, New York, where Sentin was "helping [an] old lady." *Id.* Sentin "me[]t them outside" and "they" told her she needed to "go with them [to] Buffalo." *Id.* Sentin was "crying" and "scared" because she "d[idn't] understand everything." *Id.* Sentin "told them"— again, she does not say who—"[she] ha[d] to go home and check [on her] kids" before going to Buffalo. *Id.*

"[T]hey . . . followed [Sentin] . . . [to her] home," which "terrif[ied]" Sentin. *Id.* When Sentin arrived home, she "told them to go away and leave." *Id.* Sentin walked to her front door, "unaware" that "they were behind [her]." *Id.* Then, "they came fast[,] got in[ ]front of [Sentin,]" "push[ed] [her] to the side," and "went inside the house." *Id.* Sentin still was "scared" and "crying" because she "d[idn't] know what to do" and "they were very strong men." *Id.*

Inside the home, Officer Mahoney—who the Court assumes was one of the individuals who entered the house—took photos; searched drawers; and unplugged the phone, internet, and television. *Id.* at 6-7. "[A]fter that[,] [Mahoney] told [Sentin] to get

3

[her] kids ready . . . to go to [B]uffalo." *Id.* at 7.  Sentin "went to [her] daughter['s] room [and] told her to get ready," but Sentin's daughter "was very scared" and "d[idn't] want to go with them."  *Id.*  Sentin "told them that [her] daughter d[idn't] want to go," so "the[y] went upstairs to [Sentin's] daughter's room unannounced" and "busted her door in while she was changing clothes without any warning."  *Id.*; Docket Item 12 at 1.  "[A]fter [a] few minutes[,] they both came down" and told Sentin "to get in [her] car and start driving . . . to [B]uffalo."  Docket Item 1 at 7.  Sentin did "not get a chance to feed [her] kids lunch" or get them "proper clothes for the weather."  *Id.*

Sentin and her children arrived in Buffalo at 1:00 p.m., but she does not say whether she drove to the Buffalo Police Department, the Erie County CPS office, or some other location.  *See id.*  A woman "told [Sentin] to fill[] out [a] form," but when Sentin said that she did not understand the form, the woman "grab[bed] [it] and . . . took over filling [it] out."  *Id.*  Sentin signed the form at the woman's direction, but she "did not know what [she] sign[ed] for."  *Id.*

"After [a] few minutes[,] they call[ed] [Sentin and her children] one by one" to answer questions.  *Id.* at 8.  Sentin's children were called first.  *Id.*  "[T]hey" "forc[ed]" Sentin's son and daughter "to say something" and told Sentin's son "that it was OK to lie."  *Id.*  Sentin's daughter "told them nothing happen[ed]."  *Id.*

When "they call[ed] [Sentin,] they ha[d] [her] sit [at a] long table."  *Id.*  Sentin did not "understand what they [were] talking about."  *Id.*  "[T]hey force[d] [Sentin] to say something [in the same] way [they] force[d] [Sentin's] kids [sic]."  *Id.*

Around 5:00 p.m., Sentin "told them [she and her children] need[ed] to go home" because the children had not eaten since lunch.  *Id.*  Sentin and her children arrived home at 6:30 p.m.  *Id.*

A few days later, Sentin received a call from Kimberly K., a CPS worker.  *Id.*  After Kimberly K. "ask[ed] about [Sentin's] kids," she told Sentin to drive to the CPS office.  *Id.*  Sentin arrived at the Erie County Department of Social Services at 11:30 a.m.*, id.*, and told Kimberly K. and "[an]other person" what had "happen[ed] on [February] 4 [when] the two men came to [Sentin's] house [and] force[d] [their] way inside" to search "without . . . paperwork."  *Id.* at 8-9.

But Kimberly K. and the other person "did not listen" to Sentin.[5]  *Id.* at 9.  Instead, Kimberly K. yelled at Sentin, threatened to "take [Sentin] to the court," and "called [Sentin's] daughter a li[a]r."  *Id.*  Sentin began to cry because she "did not expect [a] government worker [to] talk like that."  *Id.*  Additionally, Sentin—who is Asian—suspected that Kimberly K.'s comments were racially motivated.  *Id.*  Kimberly K. "told [Sentin her] kids [could not] go back home," so Sentin's parents picked up the children from school that day.  *Id.*

The next day, Sentin met Kimberly K. at Sentin's parents' house.  *Id.*  Kimberly K. was "rude" during the visit and "did not even check [the] kids['] room [to see] if there [was] anything they need[ed] like [a] normal CPS worker would do."  *Id.*

Sentin "tried to work with [Kimberly K.] to get [her] kids back[,] but [Kimberly K.] always work[ed] against" Sentin and "never offer[ed] any help."  *Id.*  At some point,

---

[5] Sentin does not say whether the unnamed individual who "did not listen" to her was one of the named defendants here.  See Docket Item 1 at 9.

5

Kimberly K. told Sentin that to get her children back, Sentin must "find [her] own place," "get suitable income," and "finish [a] parenting class program." *Id.*  Sentin did those things, but "they still have [her] son" and "won't release[] him." *Id.*

Sentin had a court date in March 2022, but she did not "understand what they [were] talking about" during the proceedings because the court did not provide an interpreter. *Id.* at 10.  After the court date, "they serve[d] [Sentin] a[n] [order of protection]" preventing her from seeing her children. *Id.*  Sentin's children remained with her parents "for [a] few months." *Id.*  During this time, she "was not allowed to talk [to her] kids or visit them without supervision." *Id.*

Sentin returned to court in November 2022. *Id.*  During the proceeding, "they force[d] [Sentin's parents] to sign [a] paper and admit the crime." *Id.*  The judge told Sentin's parents that if they did not sign the paper, Sentin's children would be placed in foster care. *Id.*

After that, Sentin's children were placed in foster care. *Id.*  Since then, CPS workers have "harass[ed]" Sentin's children at school and pulled them out of class to talk with them." *Id.* at 10-11.  In early 2023, Sentin's son told her "that his foster mom took him to get a shot." *Id.* at 11; *see* Docket Item 12 at 2 (alleging that Sentin's son "was vac[c]inated again[st] [Sentin's] will and religio[us] beliefs without [Sentin's] knowledge or consent").

Sentin's son remains in foster care, *see* Docket Item 1 at 12, but he "want[s] to go back home with [Sentin]," *id.* at 14.  Sentin wants the defendants to be "held accountable," *id.* at 12, and asks for "justice," *id.*, and "[her] son back," *id.* at 14.  She does not say whether she seeks money damages or injunctive relief.  *See id.* at 5.

**LEGAL PRINCIPLES**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**DISCUSSION**

I.   **SECTION 1983 CLAIMS**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual

actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

### A.     Szczepankiewicz and Cobb

Szczepankiewicz and Cobb have moved to dismiss the claims against them. Docket Items 7, 8.  Szczepankiewicz argues that the complaint contains "no plausible facts" suggesting that she "violated [Sentin's] civil right[s]."  Docket Item 8-3 at 2; *see id.* at 3 (arguing that Sentin "merely gave a story that failed to state any allegation of wrongdoing").  Similarly, Cobb argues that Sentin "failed to provide any 'factual content'" from which the Court may "infer [Cobb's] liability for any misconduct."  Docket Item 7-3 at 2.

Liability under section 1983 may attach only upon a showing that a party was personally involved in causing the claimed injury.  *See, e.g.*, *Tangreti*, 983 F.3d at 618. Sentin's complaint does not make any factual allegations about Szczepankiewicz and Cobb, let alone plausibly allege that they were personally involved in the challenged conduct.[6]  *See generally* Docket Item 1.  In other words, Sentin does not say what Szczepankiewicz and Cobb did that allegedly violated her rights.

Sentin's claims against Szczepankiewicz and Cobb therefore are subject to dismissal.

---

[6] While the complaint includes factual allegations against "Kimberly K.," the Court does not assume that Kimberly K. and Kimberly Szczepankiewicz are the same person because Sentin specifically included Kimberly K.'s last initial.  *See* Docket Item 1.  If Kimberly K. and Kimberly Szczepankiewicz are the same person, Sentin must clarify that in an amended complaint.

B.     **Mahoney**

Mahoney also has moved to dismiss the claims against him.  Docket Item 20.  He argues that "[n]one of [Sentin's] allegations, accepted as true and taken together, allow[] an inference that [his] conduct . . . violated [Sentin's] constitutional rights" because "[t]he complaint does not specify which of [Sentin's] civil rights Mahoney allegedly violated."  Docket Item 21 at 2-3.  Sentin responds that Mahoney violated her and her children's "[F]ourth [A]mendment rights" when he entered and searched her home without her consent.  Docket Item 23 at 1.

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. amend. IV.  The "very core" of that protection is an individual's right "to retreat into [her] own home and there be free from unreasonable governmental intrusion."  *Florida v. Jardines*, 569 U. S. 1, 6 (2013) (citation omitted).  Therefore, "[a]bsent exigent circumstances," law enforcement cannot reasonably enter a home "without a warrant."  *Payton v. New York*, 445 U.S. 573, 590 (1980).

But "warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement."  *Kentucky v. King*, 563 U.S. 452, 462 (2011).  To determine whether a search or seizure is reasonable, a court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion" and determine whether "the totality of the circumstances justified [the] particular sort of search or seizure."  *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (citations and internal quotation marks omitted).

The complaint can fairly be read to assert a Fourth Amendment claim for unlawful search against Mahoney:  Sentin alleges that Mahoney entered her home, took

9

photos, and searched drawers "without . . . paperwork"—that is, without a warrant. See Docket Item 1 at 6-9. Mahoney does not explain why that alleged search was reasonable; rather, he merely asserts that Sentin's allegations, "taken as true, do not amount to a constitutional violation." Docket Item 21 at 3.

That conclusory argument, which does not address the merits of Sentin's Fourth Amendment claim, is unavailing.[7] Mahoney's motion to dismiss therefore is denied.

## II.   LEAVE TO AMEND

Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999))); *Boykin v.*

---

[7] Mahoney argues in the alternative that he is entitled to qualified immunity. Docket Item 21 at 3-4.

A defendant asserting qualified immunity at the pleading stage "faces a formidable hurdle" because "the plaintiff is entitled to all reasonable inferences from the facts alleged." *McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir. 2004). And generally, qualified immunity should be resolved on summary judgment rather than on a motion to dismiss. *See id.* at 436 (noting that a motion to dismiss on qualified immunity grounds "may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief'" (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992))).

Based on the facts alleged, this Court finds that Mahoney's qualified immunity argument is premature.

*KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").

Therefore, in light of her *pro se* status, Sentin may amend her complaint to add facts establishing Szczepankiewicz's and Cobb's personal involvement in the events giving rise to her claims. Any amended complaint should specify exactly which defendant or defendants took each action Sentin complains about, and Sentin should make her complaint as clear as possible and avoid repeatedly referring to the defendants as "they."

Additionally, any amended complaint should, to the extent possible, (1) include numbered paragraphs, (2) state what relief Sentin seeks, and (3) articulate which of Sentin's rights were violated by each defendant.[8] *See* Fed. R. Civ. P. 8, 10.

Sentin is advised that an amended complaint is intended to **completely replace** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

---

[8] Szczepankiewicz's motion for a more definite statement, *see* Docket Item 8; Docket Item 8-3 at 4-6, is granted to the extent noted above.

Sentin is forewarned that federal district courts generally cannot interfere in ongoing Family Court proceedings or with existing Family Court orders. *See, e.g.*, *Graesser v. LoVallo*, 2022 WL 1443914, at *3 & n.7 (W.D.N.Y. May 6, 2022) (describing the circumstances in which a district court should not intervene in Family Court custody proceedings). So if Sentin seeks an order returning her son to her, this Court likely cannot award that relief. *See id.*

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that Mahoney's motion to dismiss, Docket Item 20, is DENIED; and it is further

ORDERED that Szczepankiewicz's motion for a more definite statement, *see* Docket Item 8; Docket Item 8-3 at 4-6, is GRANTED; and it is further

ORDERED that Sentin may amend her complaint **within 45 days of the date of this order;**[9] and it is further

ORDERED that if Sentin does not file an amended complaint correcting the deficiencies noted above **within 45 days of the date of this order**, Cobb's and Szczepankiewicz's motions to dismiss, Docket Items 7 and 8, will be GRANTED, and the Clerk of the Court shall terminate Cobb and Szczepankiewicz as defendants to this action; and it is further

ORDERED that if an attorney does not enter a notice of appearance on behalf of Mekayla Rae Sentin and Gabriel Horder **within 45 days of the date of this order**, those parties will be terminated as plaintiffs in this action and the claims asserted on their behalf will be dismissed; and it is further

ORDERED that Sentin shall notify the Court in writing if her address changes. The Court may dismiss the action if Sentin fails to do so.

---

[9] Sentin is advised that she may be eligible for help in amending her complaint from the Pro Se Assistance Program, a joint project staffed by the University at Buffalo School of Law and the Erie County Bar Association Volunteer Lawyers Project. The program can be reached by calling 716-847-0662, ext. 340, and leaving a message. Additional information is available at https://www.nywd.uscourts.gov/pro-se-assistance-program-0.

SO ORDERED.

Dated:   November 15, 2023
         Buffalo, New York

                                          /s/ Lawrence J. Vilardo
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE